No. 19-257C
(Judge Campbell-Smith)

_____

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
_____

DAVID JONES,

Plaintiff,

v.

UNITED STATES,

Defendant.
_____

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
_____

                                          JOSEPH H. HUNT
                                          Assistant Attorney General

                                          ROBERT E. KIRSCHMAN, JR.
                                          Director

                                          REGINALD T. BLADES, JR.
                                          Assistant Director

                                          ERIN K. MURDOCK-PARK
                                          ANN C. MOTTO
                                          Trial Attorneys
                                          Commercial Litigation Branch
                                          Civil Division
                                          Department of Justice
                                          P.O. Box 480, Ben Franklin Station
                                          Washington, D.C. 20044
                                          Tel:   (202) 616-3753
                                          Fax:  (202) 514-8624

Dated: August 16, 2019                          Attorneys for Defendant

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 4

    I.        Plaintiff Has Not Stated A Claim For A Violation Of The FLSA .......................... 4

            a.        The Anti-Deficiency Act, Not The FLSA, Controls The Government's
                   Payment Obligations During A Lapse In Appropriations .......................... 4

            b.        Sovereign Immunity Places The Federal Government On An Entirely
                   Different Footing Than Other Employers .................................................. 7

    II.       Even If Plaintiff Has Stated A Claim Under the FLSA, Liquidated Damages
            Should Not Be Awarded ....................................................................................... 11

    III.      This Court's Holding In *Martin v. United* States Is Not Binding ......................... 14

CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                   **PAGE(S)**

*Abbey v. United States*,
   745 F.3d 1363 (Fed. Cir. 2014) ............................................................................................... 5

*Biggs v. Wilson*,
   1 F.3d 1537 (9th Cir. 1993) ............................................................................................. 9, 10

*Dellew Corp. v. United States*,
   855 F.3d 1375 (Fed. Cir. 2017) ............................................................................................. 14

*FAA v. Cooper*,
   566 U.S. 284 (2012) .......................................................................................................... 3, 8

*Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*,
   48 F.3d 1166 (Fed. Cir. 1995) ............................................................................................. 2, 3

*Kinney v. D.C.*,
   994 F.2d 6 (D.C. Cir. 1993) .................................................................................................. 13

*Lane v. Pena*,
   518 U.S. 187 (1996) ............................................................................................... 3, 7, 9, 10

*Martin v. United States*,
   130 Fed. Cl. 578 (2017) ..................................................................................... 6, 13, 14, 15

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990) ................................................................................................................ 6

*Palafox St. Assocs., L.P. v. United States*,
   114 Fed. Cl. 773 (2014) ....................................................................................................... 11

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   132 S. Ct. 2065 (2012) ................................................................................................. 3, 5, 6

*Rochester Pure Waters Dist. v. EPA*,
   960 F.2d 180 (D.C. Cir. 1992) .............................................................................................. 13

*Salazar v. Ramah Navajo Chapter*,
   567 U.S. 182 (2012) ............................................................................................................... 7

*San Antonio Hous. Auth. v. United States*,
   No. 17-1796C, 2019 WL 2439708 (Fed. Cl. June 11, 2019) ................................................ 14

*Sotera Def. Sols., Inc. v. United States*,
    118 Fed. Cl. 237 (2014) .................................................................................................. 14

**STATUTES**

29 U.S.C. §§ 201-19 ............................................................................................................... 2

29 U.S.C. § 202 ....................................................................................................................... 5

29 U.S.C. § 206 ....................................................................................................................... 5

29 U.S.C. § 207 ....................................................................................................................... 5

29 U.S.C. § 260 ................................................................................................................ 11, 13

31 U.S.C. § 1341(a)(1)(A) ...................................................................................................... 4

31 U.S.C. § 1341(c)(1)(A) ...................................................................................................... 2

31 U.S.C. § 1341(c)(3) ............................................................................................... 2, 4, 7, 12

**RULES**

RCFC 12(b)(6) ...................................................................................................................... 11

**REGULATIONS**

9 C.F.R. § 381.38 ................................................................................................................. 10

9 C.F.R. § 307.5 ................................................................................................................... 10

**LEGISLATION**

The Government Employee Fair Treatment Act of 2019,
    Pub. L. No. 116-1, 133 Stat. 3 .................................................................................... 1, 3

Further Additional Continuing Appropriations Act, 2019,
    Pub. L. No. 116-5, 133 Stat. 11 ...................................................................................... 1

S. Rep. No. 75–884, at 4 (1937) ............................................................................................. 5

**MISCELLANEOUS**

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, MEMORANDUM FOR: HEADS OF
EXECUTIVE DEPARTMENTS AND AGENCIES, SUBJECT: GOVERNMENT EMPLOYEE FAIR TREATMENT
ACT OF 2019, *available at* https://chcoc.gov/content/government-employee-fair-treatment-act-
2019 (last visited Aug. 14, 2019) .......................................................................................... 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| DAVID JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-257C |
| ) | (Judge Campbell-Smith) |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) and the Court's June 5, 2019 order, Dkt. No. 18, defendant, the United States, respectfully submits this reply in support of its motion to dismiss plaintiff's complaint.

**INTRODUCTION**

The Anti-Deficiency Act prohibited agencies whose appropriations had lapsed from compensating plaintiff or any other agency workers during the recent partial government shutdown.  Congress elucidated the Anti-Deficiency Act's prohibitions by amending the Act on January 16, 2019, during the recent lapse in appropriations.  The Government Employee Fair Treatment Act of 2019, Pub. L. No. 116-1, 133 Stat. 3, provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse."  *See* Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5, 133 Stat. 11.  Although the Government Employee Fair Treatment Act

of 2019 was enacted in January, it expressly, retroactively applies to any lapse in appropriations that began on or after December 22, 2018.[1] 31 U.S.C. § 1341(c)(1)(A).

By amending the Anti-Deficiency Act during the recent lapse in appropriations, Congress expressly codified when federal officials must pay excepted employees who are (or may in the future be) required to work during a lapse in appropriations: (1) at the earliest date possible after the lapse ends, (2) subject to the enactment of appropriations Acts ending the lapse. 31 U.S.C. § 1341(c)(3). Congress also established that excepted employees who work during a lapse in appropriations "shall be paid for such work, at the employee's standard rate of pay." *Id*.

Plaintiff asks this Court to ignore Congress's express directives in the Anti-Deficiency Act. Plaintiff claims that he is entitled to liquidated damages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, because he was required to perform work during the recent lapse in appropriations and was not paid on his regularly scheduled paydays for that work. Dkt. No. 1 (Compl.) ¶¶ 1-7.

As explained in the United States' motion to dismiss, the FLSA's explicit terms do not require payment on an employee's regularly scheduled payday. Dkt. No. 15 (Def. Mot.) at 14-15. In fact, the FLSA's text contains no requirement that federal employees be paid on a particular day. *Id.* Although some courts have held that the FLSA implicitly requires payment on an employee's regularly scheduled payday, the FLSA's implied "prompt payment" rule must be reconciled with payment instructions to agencies in light of the government's Anti-Deficiency Act obligations. *See Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d

---

[1] To the extent plaintiff argues that the Government Employee Fair Treatment Act cannot be applied retroactively to this case, that argument is clearly rejected by the Act's statutory text. 31 U.S.C. § 1341(c)(1)(A) ("the term 'covered lapse in appropriations' means any lapse in appropriations that begins on or after December 22, 2018").

1166, 1171 (Fed. Cir. 1995).  Further, canons of statutory interpretation dictate that the specific governs the general.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012).  The FLSA generally establishes minimum wages and hours of work whereas the Government Employee Fair Treatment Act is clear and specific:  payment of wages cannot be made until after appropriations acts are enacted and must be made at the employee's standard rate of pay and at the earliest date possible after the lapse ends.  Congress did not intend that when the federal government complies with mandates of the Anti-Deficiency Act, it automatically violates the FLSA.

      The United States further demonstrated in its motion to dismiss that principles of sovereign immunity require dismissal of plaintiff's complaint.  Def. Mot. at 14-17.  It is axiomatic that the federal government must unequivocally express a waiver of sovereign immunity in statutory text.  *FAA v. Cooper*, 566 U.S. 284, 291 (2012).  Indeed, the fundamental principle of sovereign immunity is what places the federal government on an entirely different footing than private or state and local government employers.  The federal government has waived sovereign immunity for claims and damages that fall *expressly* within the text of the FLSA.  But the government has not waived sovereign immunity for liquidated damages resulting from the delayed payment of wages due to a lapse in appropriations, particularly when Congress has expressly established the timing and rate of payment for work performed during such a lapse.  A waiver of sovereign immunity cannot be implied under any circumstances.  *Lane v. Pena*, 518 U.S. 187, 196 (1996).  A waiver of sovereign immunity certainly cannot be implied when another federal statute prohibits the very payments that plaintiff claims as the basis for his entitlement to liquidated damages.

The government further demonstrated in its motion to dismiss that the Court should exercise its discretion and not award liquidated damages in this case, even if plaintiff has stated a viable claim under the FLSA. Def. Mot. at 16-17. If the FLSA requires the federal government to pay minimum and overtime wages on an employee's regularly scheduled payday under all circumstances—even during a lapse in appropriations—federal officials could not legally take any action to comply with the FLSA. Federal officials, in good faith, believed that they were complying with the law because providing compensation was legally impermissible and practically impossible.

## ARGUMENT

**I.    Plaintiff Has Not Stated A Claim For A Violation Of The FLSA**

    **a.  The Anti-Deficiency Act, Not The FLSA, Controls The Government's Payment Obligations During A Lapse In Appropriations**

The Anti-Deficiency Act broadly prohibits the United States from making or authorizing an expenditure or obligation exceeding available appropriations. 31 U.S.C. § 1341(a)(1)(A). Because of the Act, the government indisputably cannot pay excepted employees on their regularly scheduled paydays during a lapse in appropriations; doing so would violate the Anti-Deficiency Act and subject violators to criminal penalties. In January 2019, Congress amended the Anti-Deficiency Act to clarify when and at what rate the United States must pay wages to excepted employees when a lapse in appropriations occurs. The Anti-Deficiency Act now requires that excepted employees shall be paid at their standard rate and at the earliest date possible after the lapse in appropriations ends, and subject to the enactment of appropriations Acts ending the lapse. § 1341(c)(3).

There is no dispute that the United States complied with the Anti-Deficiency Act as amended. The government paid plaintiff all of the wages that he was entitled to receive as

promptly as possible after appropriations were restored, and plaintiff does not contend otherwise. Nevertheless, plaintiff alleges that, by paying him as envisioned by Congress under the Anti-Deficiency Act, the government violated a separate statute—the FLSA. This theory of liability cannot be reconciled with traditional principles of statutory interpretation.

The FLSA was enacted in 1938 to counter the "evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health." S. Rep. No. 75–884, at 4 (1937); *see* 29 U.S.C. § 202 (explaining that the FLSA was enacted to correct existing "labor conditions detrimental to the minimum standard of living necessary for health, efficiency, and general well-being of workers."). An employer violates the FLSA if it fails to pay minimum and overtime wages to covered employees. *See* 29 U.S.C. §§ 206, 207. The federal government is an "employer" for purposes of the FLSA. *See Abbey v. United States*, 745 F.3d 1363, 1370 (Fed. Cir. 2014). But unlike all other employers regulated by the FLSA, the federal government is also governed by the Anti-Deficiency Act, which specifically prohibits government officials from paying its employees during a lapse in appropriations and provides for prompt payment when appropriations are restored.

Plaintiff alleges that the federal government violated the FLSA by failing to pay him on his regularly scheduled payday. But when interpreting statues, the specific governs the general. *RadLAX Gateway Hotel*, 132 S. Ct. at 2071. The purpose of the FLSA was to set minimum standards for wages and hours worked. 29 U.S.C. § 202. Furthermore, the FLSA is entirely silent as to when wages must be paid, and it does not contain any language that speaks to lapses in appropriations. The Anti-Deficiency Act, especially as amended, is clear and specific to the situation at hand: the payment of wages cannot be made until after appropriations acts are

enacted and must be made at the employee's standard rate of pay and at the earliest date possible after the lapse ends, regardless of scheduled pay dates.

To eliminate any perceived or implied contradiction between the two statutes, the specific provisions of the Anti-Deficiency Act must be construed as an exception to the FLSA even assuming *arguendo* plaintiff's mistaken premise that the FLSA impliedly requires prompt payment during a lapse in appropriations. *See RadLAX Gateway Hotel*, 132 S. Ct. at 2071 ("To eliminate the contradiction, the specific provision is construed as an exception to the general one."). Harmonizing the FLSA and Anti-Deficiency Act means that plaintiff was entitled to receive compensation when and at the rate specifically prescribed by Congress and not on a date that courts have implied in interpreting the FLSA.

Plaintiff urges that this Court in *Martin v. United States* properly reconciled the Anti-Deficiency Act and the FLSA. Pl. Resp. at 13-15. In *Martin*, this Court held that the "appropriate way to reconcile the two statutes is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied. Rather, the court would require the defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate." *See Martin v. United States*, 130 Fed. Cl. 578, 584 (2017). Under this interpretation, the government *violates* the FLSA when it complies with the Anti-Deficiency Act during a lapse in appropriations, but may escape *liability for damages* for that violation if it can satisfy the good-faith defense under the FLSA. But that interpretation is premised on the implausible assumption that, when Congress enacted the FLSA *after* it enacted the Anti-Deficiency Act, Congress intended that when the government complies with the Anti-Deficiency Act, it also *per se* violates the FLSA. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("[w]e assume that Congress is aware of existing law when it passes legislation.").

### b. Sovereign Immunity Places The Federal Government On An Entirely Different Footing Than Other Employers

The Supreme Court has made clear that "when it comes to an award of money damages, sovereign immunity places the Federal Government on an entirely different footing than private parties." *Lane*, 518 U.S. at 196. Plaintiff responds that the Anti-Deficiency Act does not excuse the government from its obligation to pay employees on time under the FLSA. Pl. Resp. at 6. In support, plaintiff cites *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182 (2012), for the proposition that the Anti-Deficiency Act's prohibitions do not defeat obligations of the government, but only apply to government officials. *Id*.

There are several flaws with plaintiff's argument. First, the FLSA contains no express obligation that requires the federal government to pay employees on their regularly scheduled payday. Second, even if a general obligation exists under the FLSA requiring the United States to pay federal employees at a particular time, the Anti-Deficiency Act, as amended in January 2019, is more than just a constraint on government officials. And unlike *Salazar*, this case involves more than just a lack of appropriated funds. *See Salazar*, 567 U.S. at 190 (determining whether the government was required to pay the full amount of certain costs incurred by tribes in performing contracts, notwithstanding Congress's failure to appropriate sufficient funds). Congress codified in the Anti-Deficiency Act when and at what rate, following a lapse in appropriations, payment to federal employees must occur: (1) at the employee's standard rate of pay, (2) at the earliest date possible after the lapse in appropriations ends, and (3) subject to the enactment of appropriations Acts. § 1341(c)(3).

Plaintiff argues that the Government Employee Fair Treatment Act does not "modif[y] the requirements of the FLSA by establishing a different date by which payments to federal employees are due" because the Act "does not mention minimum wage and overtime

7

compensation, liquidated damages, or even the FLSA in general." Pl. Resp. at 7.  Contrary to plaintiff's assertions, the United States is not asking the Court to interpret the Government Employee Fair Treatment Act as a modification of the FLSA.  *See id.*  The United States is explaining the scope of the government's waiver of sovereign immunity under the FLSA, particularly in light of the Anti-Deficiency Act's prohibitions and the most recent amendments specifically codifying when and at what rate, during a funding gap, payments to excepted employees like plaintiff in this case are to occur.  Although plaintiff contends otherwise, those statutory amendments make clear that such payments are to be made at the employee's standard rate of pay and at the earliest date possible after a lapse in appropriations ends and only after and subject to the appropriations acts enacted.

That the Office of Personnel Management (OPM) issued a memorandum on January 23, 2019, confirming that the Act provides for back pay "as soon as possible after the lapse in appropriations ends, regardless of scheduled pay dates," only serves to reinforce the government's position that the Anti-Deficiency Act, and not the FLSA, dictates when and at what rate payment of wages is to be made following a funding gap.  *See* Pl. Resp. at 10.[2]  And that OPM refers to payment under the Government Employee Fair Treatment Act as "retroactive pay" has no impact on the analysis of whether the United States has waived sovereign immunity under the FLSA for plaintiff's claims in this case.  *See id.* at 10-11.

"[T]he Government's consent to be sued is never enlarged beyond what a fair reading of the text requires."  *Cooper*, 566 U.S. at 290-91.  The pertinent inquiry in this case is not whether

---

[2] UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, MEMORANDUM FOR: HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES, SUBJECT: GOVERNMENT EMPLOYEE FAIR TREATMENT ACT OF 2019, *available at* https://chcoc.gov/content/government-employee-fair-treatment-act-2019 (last visited Aug. 14, 2019).

the government has consented to damages under the FLSA, but rather the scope of such waiver. *See id.* (although Congress consented to be sued for "actual damages" under the Privacy Act, the question at issue concerns the scope of that waiver). The text of the FLSA does not contain an express waiver of sovereign immunity for money damages when the government does not pay an employee on a regularly scheduled payday. The Supreme Court has repeatedly refused to enforce a waiver against the government that is not unambiguously expressed in the statute. *Id*. at 290-91; *Lane*, 518 U.S. at 196. A waiver of the government's sovereign immunity cannot be implied, and "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 192 (internal citations omitted).

Given that the Anti-Deficiency Act not only prohibits federal agencies from paying excepted employees on their regularly scheduled paydays during a lapse in appropriations, but also specifically addresses when and at what rate wages are to be paid following a lapse in appropriations, the government's waiver of sovereign immunity under the FLSA must be strictly construed against liability for the delayed (but always forthcoming) payment of wages because of a lapse in appropriations.

Relatedly, it is insufficient that some courts have held that an FLSA claim *per se* accrues for statute of limitations purposes and cause of action purposes when an employer does not pay workers on their regular payday. *See* Pl. Resp. at 4-5. The question of whether the government has waived sovereign immunity for money damages, and determining the scope of that waiver, is analytically distinct from determining when the accrual period begins for a particular claim. Other than *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993), the accrual cases cited by plaintiff do not involve lapses in appropriations. *See* Pl. Resp. at 4-5. And *Biggs* is distinguishable because it involved a state lapse in appropriations in California, and the state of California is not bound

9

by the Anti-Deficiency Act. *See Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993). The FLSA, as the only federal statute at issue in *Biggs*, would preempt California appropriations laws.

Whatever the merit of a *per se* rule in cases involving private employers, a cause of action under the FLSA cannot *per se* accrue against the United States when federal agencies do not pay employees on their regularly scheduled paydays during a lapse in appropriations because a federal statute expressly provides for when and at what rate federal employees will be paid under those circumstances. Further, a *per se* rule would effectively punish federal employers for acts outside of the agencies' control.

Finally, plaintiff incorrectly suggests that, by passing the 1974 Amendments to the FLSA, the government elected to treat itself like any other employer for purposes of liability under the FLSA. *See* Pl. Resp. at 14. Contrary to plaintiff's assertions, this case cannot be considered in a vacuum and by simply referring to FLSA case law involving private employers. *See id.* at 2-3 (claiming that the government's arguments "that the FLSA does not require payment by any specific date defies case law."). When it comes to an award of money damages, sovereign immunity means that the United States cannot be treated the same as private employers. *See Lane*, 518 U.S. at 196. As previously explained, the government's waiver of sovereign immunity under the FLSA must be strictly construed against liability for the delayed, but always forthcoming, payment of wages because of a lapse in appropriations.[3]

---

[3] Plaintiff repeatedly claims that this case "involves unique circumstances" because 9 C.F.R. § 307.5 and 9 C.F.R. § 381.38 generally require meat and poultry establishments to reimburse the inspection program for the cost of an inspection. *See* Pl. Resp. at 15. Plaintiff does not explain what relevance, if any, these regulations might have to plaintiff's overarching FLSA claims. Whether meat and poultry establishments reimburse the inspection program has no bearing on whether plaintiff is entitled to recover under the FLSA. Moreover, plaintiff likely does not have standing to enforce regulations governing reimbursement to the inspection program.

## II. Even If Plaintiff Has Stated A Claim Under the FLSA, Liquidated Damages Should Not Be Awarded

Liquidated damages are discretionary in FLSA cases. As explicitly stated in the FLSA, a court is authorized to award no damages or reduced damages when an employer demonstrates that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938." 29 U.S.C. § 260.

Plaintiff claims that the United States seeks a premature adjudication of its good faith affirmative defense. Pl. Resp. at 15-16. Plaintiff is incorrect. "A complaint can also be dismissed under RCFC 12(b)(6) if it is clear from the face of the complaint that an affirmative defense exists." *Palafox St. Assocs., L.P. v. United States*, 114 Fed. Cl. 773, 780 (2014). Plaintiff alleges in his complaint that he was required to work during the recent lapse in appropriations, and that he was not paid on his regularly scheduled paydays. Compl. ¶¶ 1-7. It is undisputed that the Anti-Deficiency Act legally forbade federal agencies from paying employees during the recent lapse in appropriations. Thus, it is clear in this case that the statutory "good faith" defense exists—federal agencies, in good faith, did not pay excepted employees on their regularly scheduled paydays during the lapse in appropriations because prevailing federal law expressly prohibited agencies from doing so.

Plaintiff further claims that the United States cannot rely on the Government Employee Fair Treatment Act in support of its good faith defense because the Act—which was enacted on January 16, 2019—did not yet exist when the government did not pay plaintiff's wages on December 28, 2018, and January 11, 2019. Pl. Resp. at 16-17. Plaintiff is incorrect, and he misunderstands the premise of the government's argument.

The Anti-Deficiency Act—even before Congress amended it in 2019—controls the outcome of this case.  As the United States previously explained in this case, the FLSA's implied "prompt payment" requirement must cede to the Anti-Deficiency Act and to Congress's constitutionally granted power to control appropriations.  And any doubt as to the obligations imposed on the United States by Congress was removed by the 2019 legislation, which unambiguously provides that excepted employees "shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates."  § 1341(c)(3).  Accordingly, the United States is not relying on a "new" statute to establish good faith in this case.  The Government Employee Fair Treatment Act amended the Anti-Deficiency Act to clarify what the United States has consistently explained all along:  the FLSA's implied prompt payment requirement (to the extent it exists as to the United States) does not apply to the federal government during a lapse in appropriations.

If the Court were to find that the government violated the FLSA, the Court should exercise its discretion to deny liquidated damages.  The United States demonstrated in its motion to dismiss that the express language of the FLSA does not require that payment of minimum and overtime wages must be made on a date certain.  Further, there is no binding case law on point that involves the interplay between the Anti-Deficiency Act, the Appropriations Clause, and the FLSA.  Given the clear restrictions of the Anti-Deficiency Act, agencies would have no reason to believe that paying their employees as early as possible after appropriations acts were enacted, at their standard rate of pay, would be an FLSA violation.

The good-faith inquiry under the FLSA asks whether an employer has shown to the satisfaction of the court that the act or omission giving rise to such action was in good faith and

that the employer had reasonable grounds for believing that its act or omission was not a violation of the FLSA. *See* 29 U.S.C. § 260. This Court in *Martin* held that an employer must "take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Martin*, 130 Fed. Cl. at 585. In the usual case between private employees and employers, it may make sense to ascertain what steps the employer took to determine the dictates of the FLSA. However, the federal government faces an acute and unique barrier to satisfying this standard during a lapse in appropriations: two federal statutes, one of which may imply that payment is required on a particular date, the other of which says payment is forbidden on that date.

Moreover, no binding case law exists that concludes that the United States is liable for liquidated damages under the FLSA for not paying excepted employees on their regularly scheduled paydays during a lapse in appropriations. The uncertainty in the state of the law, combined with two potentially conflicting federal statutes, establishes that the government acted on a reasonable belief that it was complying with the law. *See Kinney v. D.C.*, 994 F.2d 6, 13 (D.C. Cir. 1993) (uncertainty in the state of the law can support an employer's contention that it acted on a reasonable belief that it was complying with the statute).

Finally, requiring the government to ascertain the dictates of the FLSA during a lapse in appropriations, even though the government indisputably cannot pay excepted employees until appropriations acts are enacted, would be fruitless. Even if federal agencies were to determine that the FLSA would require prompt payment on excepted employees' regularly scheduled paydays, notwithstanding a lapse in appropriations and the Anti-Deficiency Act, the United States could not "then act to comply[.]" *See Martin*, 130 Fed. Cl. at 585. Congress, not the individual federal agencies, has exclusive power over the federal purse. *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992). The government recognized its obligations to

pay excepted employees for the hours worked during the lapse in appropriations and paid those wages as soon as practicable after appropriations were made to provide funds to do so. The government reasonably believed in good faith that it was complying with the law.

### III. This Court's Holding In *Martin v. United States* Is Not Binding

This Court in *Martin* concluded that plaintiffs similarly situated to plaintiff in this case stated a claim for liquidated damages under the FLSA following the 2013 lapse in appropriations. *See* 130 Fed. Cl. 578. Plaintiff makes much of the fact that the United States raised similar arguments in *Martin* that it raises in this case. Pl. Resp. at 5. Indeed, plaintiff goes as far as to argue that the United States "was on notice" because of this Court's holding in *Martin* "that its failure to pay Plaintiff and other food inspectors violated the FLSA," and that these facts "show that Defendant's actions were neither objectively nor subjectively reasonable." Pl. Resp. at 17-18.

This Court's decision in *Martin* is not binding precedent. This Court is bound only by decisions of the Federal Circuit and the United States Supreme Court. *San Antonio Hous. Auth. v. United States,* No. 17-1796C, 2019 WL 2439708, at *29 (Fed. Cl. June 11, 2019) ("This court is not bound by decisions issued by Judges of this court but only by decisions issued by the United States Court of Claims, this court's predecessor, the United States Court of Appeals for the Federal Circuit, and the United States Supreme Court."); *Sotera Def. Sols., Inc. v. United States*, 118 Fed. Cl. 237, 258 (2014); *see also Dellew Corp. v. United States*, 855 F.3d 1375, 1382 (Fed. Cir. 2017). For the reasons outlined above, the United States respectfully argues that *Martin* was incorrectly decided. Moreover, *Martin* remains pending and the Court has not entered final judgment in that case. Accordingly, the Court should reject plaintiff's suggestion

that *Martin* both controls the outcome in this case and mandates that the United States cannot establish its good faith.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court dismiss plaintiff's complaint because the complaint fails to state a claim upon which relief may be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
ANN C. MOTTO
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 616-3753
Fax: (202) 514-8624

Dated: August 16, 2019                                                      Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 16th day of August, 2019, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS" was filed electronically. This filing was served electronically to all parties by virtue of the court's electronic filing system.

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
